Good morning, Your Honors, and may it please the Court, William Rounds on behalf of the petitioners of Malkit, LNU, and family. I would like to reserve two minutes for rebuttal at the end, so I'll try and keep track of my time. Now, this case is primarily about the BIA and the immigration judge failing to consider all of the relevant factors in making an adverse credibility finding and ultimately in their determination to deny asylum, withholding, and convention against torture. Both either misrepresented the record or failed to address directly relevant facts that would undermine the adverse credibility determination that the immigration judge made. First, and probably the most clear, the BIA misrepresented the fact that the immigration judge did invoke the falsus in uno maxim. The BIA stated that the judge did not invoke it, but the immigration judge quoted the falsus in uno maxim. The immigration judge cited to a case where he got the falsus in uno maxim. And that was one of only four cases total that the immigration judge cited in his oral decision. Now, he included a separate addendum of law that had several other cases, but in his oral decision, there was only four cases cited. And that one, referring to the falsus in uno maxim, was one of them. So for the BIA to state that the immigration judge did not invoke the falsus in uno maxim I think is just a clear misrepresentation of the record. And that's a clear indication that the BIA did not consider all of the relevant factors when coming to its own. What was wrong with invoking falsus in uno? There's nothing necessarily wrong with invoking it. How about in this case? In this case, there is nothing wrong with invoking it at all or in general. It's the fact that the BIA stated that the immigration judge did not invoke it. When it's clear on the face of the judge's decision that it was invoked. Now, the falsus in uno maxim is can be used to say, hey, there is a problem or something, some inconsistency, some discrepancy here, and so I think we should apply it elsewhere. There's nothing wrong with doing that. But the way that the immigration judge did it and the fact that the BIA claimed that it was not invoked is the issue. Why is that a problem? If we agree with you that the immigration judge did actually invoke it, which I think that's a disputed question, but if we agree with you, why is that an error for the BIA to say that it didn't happen? Because it's plain on its face that it didn't happen. So if the BIA is going to make that kind of an error on the assumption. I'm trying to get at material. That's sort of a procedural point, but what does it mean in terms of the substance of the decision? It indicates that if they did not notice that glaring error, that there may be other errors that they did not notice. So nothing about that in and of itself is problematic in terms of reviewing the merits of this decision? I think that there is other issues because many of the specific issues or the specific discrepancies or inconsistencies that were raised themselves can be significantly Well, the IJ did go through each of the alleged deficiencies in his credibility. He did. And there's many of them that I think are undermined. So why don't we just look directly at what he did rather than worry about the unus? Certainly. So I think we can do that. One of the main issues was that they found that there were errors in the documents, and so the sufficiency of the documents was not such that it could be that the documents submitted in support could be reliable or credible. For example, the statements, the affidavits of the petitioner's father and the village elder, the Sarpanch, both of them included the same phrase. They said, my son, Malkit. Now, looking at the totality of the circumstances of both statements, that's clearly nothing more than a drafting error. Both of them contain boilerplate-type language. The introductory two paragraphs are things like stating who they are, the fact that they have personal knowledge of what they're testifying to, their relationship to the different parties involved. That's fairly boilerplate language. However, the rest of their statements are a mix of similar language, but also unique language, because both of them, the father and the Sarpanch, are testifying to events that both of them saw from their own perspectives. So there would be some overlap, but there also is some unique language. Isn't the official's statement in the affidavit that he was quoting the father? I mean, you don't have to go that far. It's just an error because he was actually quoting somebody else, wasn't he? In that particular case, there's a lot of quoting back and forth of each other, but it just looks like it's a simple drafting error when looked in the totality of the circumstances. When I looked at it, it said, let's see, Jarnal Singh, he was the leader? Correct. Right, okay. So he's, the way I read this, he says, knowing the police is not going to help my son Malkit, he know, and there's a word left out, other option left but to leave from India with his family, his father Ram Kalan told me on December 15th, 2022 at the market. Now, that was raised to the BIA. I mean, they raised that. They pointed that out, that discrepancy. It was, and I think the last part just sort of gets dropped out by the IJ and by the BIA. And I think that another issue that the BIA makes or problem that the BIA makes with their decision is that they talk about that, that phrase, that statement going to the core issue or a core issue of the case, which it's not really a core issue. It's simply kind of a generalized closing statement of their intentions. It's not establishing any particular fact that either of those individuals saw or witnessed. And so I think that that one particular discrepancy is either minor, not going to the heart of it, which would give it less weight, or is in a totality of the circumstances just obviously a drafting error. Another issue that the judge and the BIA both had was with the distinction between whether Malkit was a member of his political party or whether he was a worker in his political party. Now, on his asylum application on page five, in response to a question, he wrote that he was a volunteer member of the party. On the next page, on page six of his application, it says that he was a worker for the party. Now, in all of his testimony and all of the other documentation, it's pretty consistent and clear that he was a worker for the party, and his testimony makes that clear that that's important. But when the immigration judge mentioned and said that this is an important distinction and he put it wrong on his asylum application, the judge did not mention that on the very next page, on page six, he said that he was a worker. The judge also didn't mention that he had included the word volunteer before member, giving it that qualifier, that it's not your regular, typical member, that he was a volunteer member. So, again, it appears that a drafting error, something that was maybe not the most clear language, is being used as something that is more significant than it is to find that the Petitioner and his documentation is not sufficiently credible. Now, when the judge asked the Petitioner on the record about this discrepancy, it's obvious that he did not know what the discrepancy or that the discrepancy existed. He just was the result of oversight or something like that. So, again, the immigration judge and then the BIA to uphold it took a very minor error and blew it out of proportion, but did not mention and did not note the substantial facts that would have undermined their adverse credibility finding. Counsel, I want to shift gears a minute. Recently, on behalf of your client, a document was filed indicating that there were errors in the briefing that was submitted and asserting that they were typographical errors. I'd like you to address that point and how they occurred. Yes. So, there were two cases. The case names and the citations were somewhat garbled. On one, the case name that was cited in the brief was Eduardo, but the correct name should have been Udo. It stands for the same proposition. There's no difference in what the case stood for. And where the error came from, not sure. It looks like it was a copy and paste error or something like that. Wasn't it the use of artificial intelligence? It was not used. Because you quote from Camalthus v. INS the phrase, an adverse credibility determination is not necessarily a death knell to cat protection. And my clerk took a look at that case and we couldn't find that phrase anywhere. It just made up. I think that that phrase comes from a different case. I think Shrestha, another case that was cited, does use that phrase. But your brief gives it to the Camalthus case. Are you sure? Are you telling me the truth that you didn't use AI to beef up your brief here? No. AI was not used to beef up the brief. Also the case of Avedano, Hernandez v. Lynch, the phrase, the BIA must consider all evidence of record, including evidence of country conditions in assessing the possibility of future torture, is a hallucinatory phrase. It doesn't occur in that case. I don't think that's an exact quote. That is discussing what the overall case stands for. Stick with the quote. Did you use AI in using that quote, counsel? No. Then how did it get there? Answer Judge Bey's question. An individual who works at the office drafts briefs, prepares them. Maybe the individual. Did the individual use AI and report it to you? It is possible, but that person did not. That person did not indicate that they used AI. And there had been many conversations. Counsel, we're having a hard time believing that because of our review of this case, but we also looked at other cases from your office, and there are other cases that briefs have been filed that are currently pending in this court that have the same problem. And this doesn't look like a typographical error. It doesn't look like a copy and paste job. It looks like there is a use of technology being employed that is not being checked. There had been many conversations with that individual who was drafting to verify that AI was not being used. And that individual said that AI was not being used to draft the briefs. And that had been repeated many times. How could you have so many mistakes and so many – it's just like it's made up. It doesn't make sense. I think that we did ask that individual, and they stated that they did not use AI. It was regularly told to that person that AI was not to be used to draft the briefs. If there are some mistakes, then – and we tried to correct the mistakes that we did notice, but AI was not used, at least not to the knowledge of myself or the attorney filing the briefs that it was used. So the person who does – I want to be clear what you just said. The person who is doing the drafting is not the person whose name is on the brief that gets filed in the court? No, but the things that do get filed by the court get reviewed by the attorney. I notice that, unless I'm missing something, your name is not on the brief. No. Why is that? This fellow works for you? No. So the individual whose name is on the brief is Mike Sethi. He is the primary attorney in these cases. I work for him. Is the person who is doing the drafting a lawyer? No. It has graduated from law school, but it's not a lawyer. But that person is no longer with the office, but Mike Sethi is the primary attorney. That's why his name is on all of the briefing. Did you want to save time for rebuttal? If I may. All right. We'll hear from the government. Good morning, Your Honors. May it please the Court. My name is Linda Chang on behalf of the U.S. Attorney General. In today's case, substantial evidence supports the adverse credibility determination for the three reasons discussed in the agency's decision. First, I will also address the fact that Your Honors picked up on this issue of whether the I.J. referenced the falsest in UNO, falsest in omnibus maxim. There is nothing inherently impermissible about stating this maxim as it is discretionary ability for the immigration judge to apply it. In this case, the immigration judge did not. As to material matters, not as to collateral matters, correct? That's correct. And I think what Your Honor is getting at is in the case that it is cited from, Yang v. Lynch, it was an adverse credibility case in the merits hearing that was then being applied to a motion to reopen, which is not what's happening in this case. And in any event, the immigration judge did not apply that maxim. As we see, he went through very specific and cogent reasons. Why did he cite it then? I mean, just for the heck of it? I'm not sure. This was an oral decision, so I can't — You think he was thinking about it? I can't be certain what was in the immigration judge's mind at the time. I mean, it's a pretty common maxim that we use. We use it in trial courts all the time. I mean, I instructed many juries. It is. This is true. State and federal. This is true. And, again, there is nothing impermissible about applying this maxim. However, in this case, it was not used. As we see, there are very discreet, cogent reasons that support. If it was used, would there be a problem? No. Again, it is permissible. However, it was not used in this case. I understand that that's the government's position. But if we disagree and think that the agency actually did rely on this maxim, then what? I think we still need to go through the rest of the immigration judge's or the agency's decision to see whether the totality of the circumstances supports an adverse credibility determination. I don't think the analysis would end with just the application of such a maxim, in which it did not happen here. Can you talk a little bit about — I'm very confused why the agency didn't seem to pick up on the fact that this concern about a duplicate statement and two different declarations seems to be easily explained by the fact that the second one was quoting the first one. And the agency doesn't deal with that explanation that was provided in the administrative proceedings. And so it really does seem that the agency is not very carefully looking at this evidence. Tell me why I'm wrong. The details around that declaration remain that when Petitioner was asked about this duplicate, verbatim statement, he provided the unconvincing explanation that the head of village council wrote it by mistake. We see that on AR-123. However, in the immigration judge's decision itself, he references that he has some concern about these statements, including medical records, because all of these declarations or documents were, in large part, based on hearsay information provided to them from the respondent. This is on page 25 of the record. So I think that kind of addresses why there was concern about this duplicitous or identical language, even though it is explained away by saying that he might have been referencing the statement by the defendant. He might have been. Right. But nonetheless, it was then provided to him by hearsay information from either respondent or respondent's father. And so then it does. Well, of course it was going to be hearsay because he's quoting someone else. So I'm not quite sure that that really explains how the agency addressed the explanation that was given for why there was this issue that the agency was concerned about. Right. Well, again, I think it goes to the totality of these documents, these declarations that were all notarized and signed on the same day and translated in India, including Petitioner's own. There was an explanation for why they all happened, that they were all notarized together, and I don't see that the agency dealt with that explanation either. Well, correct. Petitioner provided an explanation, but nonetheless, the agency does not necessarily need to accept his explanation. Well, that's true. Because they don't have to accept the explanation, but when a cogent explanation is given, don't they have to address why they don't believe it? And I don't see that that was done in this record. Well, the agency just did not seem to. The agency had concerns about these declarations because of the impossibility of how it was done, including Petitioner's own declaration, which he wrote in Hindi in America and then had it sent to India to be translated into English by the same interpreter and notary. It just had issues that the immigration judge kind of found concerning. What were those issues that he found concerning? Well, like we've said, this detail goes to why Petitioner left India, and it seems to be only based on his own statements. So that would be based on hearsay to the other declarants. And in this case, it just seemed implausible or— Were there any explanations as to why it was implausible, other than the same statements without recognition that one was a quote of the other? I mean, it didn't seem like he really read these documents very carefully, does it? I wouldn't go so far as to say that. Then how could he explain the fact that he's making a mistake? These two people aren't saying the same thing. One is quoting the other. Well, when Petitioner was asked about this specific statement, the reason that he provided, though, was that it was a mistake. So taking that explanation, in contrast to what the statement was in the declaration, it seemed like he himself did not know what was in the declaration either. Again, all of these reasons have to be considered in the totality of the circumstances, in which case— Let me ask you just one other question. Sure. What's so serious about the discrepancy between worker and member? That's a good question, Your Honor. I mean, I guess to some extent I'm a member of this Court, but I also work for it. You know, I could say I'm a— Sure. It all depends on your own interpretation. And here, Petitioner's own testimony, he states that there is a clear distinction. The members provide orders to the workers to execute. So if it were not for his own definition of why they are different and they are two different categories, there might not be any distinction. But he himself has laid it out as being so in testimony page AR92. So because he has laid it out as two separate categories, we recognize that he treats it differently. He also described himself as a volunteer member. That is correct. What does that mean? To the extent that he does say volunteer, we have only honed in on the aspect of whether he was a worker or a member in that context as well. He does not differentiate what volunteer versus non-volunteer would mean. Okay. Did the government become aware that there were errors in your opponent's briefing? Yes, we did, in the preparation of this oral argument, more specifically. You must have been curious about why we set it for argument. Very much so, Your Honor. You hadn't noticed it before? Does the government check the briefs? We do check the briefs, Your Honor. To the extent that these cases did not exist in this section regarding corroboration, we argued that Petitioner failed to exhaust the issue of corroboration, and moreover, the agency did not make a specific corroboration finding, so that was not something that we needed to address very specifically. But also to the point of these cases that he corrected, they still don't actually stand for the propositions that he says, and also in looking at the other cases you've already picked up on several, they don't actually support the statements antecedent to them. So I guess from your statement, the government didn't realize that until after they filed the statement, wanting to correct some of the citations in their brief? No. We saw it when we were preparing for argument, so it was prior to that Friday when the motion was filed. Does the government have a practice of alerting the court when there are concerns like that, or no? We were concerned. However, there is no mechanism for us to alert the court to a miscitation. It would not necessarily be a 28-J, and further we're not sure how to categorize it to the court without having just accusations lodged. Fair enough. Okay. If your honors don't have any other questions, for the reasons cited in our brief, and today we think the court should deny the petition for review. Thank you. All right. Mr. Rounds, you have a couple of minutes. Two minutes on the clock. The petitioners did attempt to correct the errors that they saw. There was no indication to us that there was any kind of AI tool used. We had asked about it and advised or instructed on it many times not to be used. Well, if you had read the cases that you cited, you would have known that the phrases that were attributed to those cases didn't exist. Doesn't that sort of indicate that somebody snuck something in? It appeared to me to be that the holding was from a different one of the cases that we cited in some of those instances.  So it wasn't in the case you cited. And it was a very good argumentative case. The citation was, this is a death knell. I mean, that's a pretty strong argument, isn't it? And it just didn't occur in the case, and you didn't catch that, did you? No, I did not catch that. Right. It did occur in at least one of the cases. I believe it was Shrestha and I think another case also used that exact same language. Both of those cases we did cite, but I did not catch that the case that was cited for that language was not the case that was included at the citation. So as I understand it, you have a non-lawyer drafting an agreement or drafting a brief that you don't cite check the cases yourself to see that the language is in there and your boss doesn't either, right? It's not on every occasion. I'm sorry, what did you just say? It sounds like not on every occasion. It sounds like. Yes, because some of those things got through. Although it is regularly checked for things that appear or appear controversial, but in some cases it didn't seem like it was controversial. In this particular case, I'm not sure, but that is the pattern and the habit and the practice. But notwithstanding some of the- Is this fellow a member of the bar now? No, the individual- The fellow who wrote the brief. No. So notwithstanding some of those errors, which we attempted to correct as much as we could, I think that the law is still on the Petitioner's side in this case. Thank you. All right. Okay. The matter of LNU v. Bondi is submitted.
judges: PAEZ, BEA, FORREST